EHRLICH, Justice,
dissenting.
The Florida Constitution[1] provides that “There shall be a judicial qualifications commission invested with jurisdiction to investigate and recommend to the Supreme Court of Florida, the removal from office of any justice or judge whose conduct, during term of office or otherwise ... demonstrates a present unfitness to hold office, and to investigate and recommend the reprimand of a justice or a judge whose conduct, during term of office or otherwise ... warrants such reprimand.” (Emphasis supplied.)
Although not specifically discussed in the majority opinion, I concur that the Judicial Qualifications Commission (JQC) has jurisdiction to proceed against a circuit judge for conduct which occurred prior to his assuming judicial office, and that this Court has authority to discipline the circuit judge under these circumstances.
The record here consists solely of Notice of Formal Proceedings and Stipulation For Submission to The Supreme Court of State of Florida. The notice recites the charge against the subject judge (judge) about which inquiry is to be made. The Stipulation executed by the judge and his counsel and by the JQC states that the factual matters stated in the Notice of Formal Proceedings are true. The facts relating to the occurrence in question do not contain the detail that would result if a formal hearing had been held, and to that extent we are handicapped.
The judge apparently had developed an expertise in the prosecution of persons charged with major drug violations as a result of his work as an assistant state attorney in the Seventeenth Judicial Circuit. After leaving that position, he became associated with a law firm in Ft. Lauderdale which specialized in the defense of persons charged with crimes, including those charged with drug violations. At the time in question, the firm with which the judge was associated was representing a defendant in State v. Murphy. We do not know to what extent the judge was familiar with the facts of that particular case or whether he had in fact conferred with the firm’s client or whether he was familiar with the firm’s file. The case was being prosecuted by an assistant state attorney in the Seventeenth Judicial Circuit who requested and held a secret conference with the judge. At this meeting, the judge counseled the assistant state attorney as to the weak points in the defense of drug-related cases, such as the one his firm was defending and which the assistant state attorney was prosecuting, and suggested suitable methods for securing a successful prosecution of such cases. The judge specifically requested that the assistant state attorney maintain the secrecy of this meeting, and the judge never advised the members of the firm with whom he was associated of the fact of the secret meeting.
Here again, we lack facts which would make us better informed as to what was said at the secret meeting. At any rate, I conclude that the judge knew he was doing *345 something wrong, and indeed he was. He was violating the trust that clients are entitled to and do repose in their lawyers. While the gentleman who was being defended by the judge’s firm may not have had any direct dealing with the judge, he was nonetheless the firm’s client and the firm could not breach his confidence or do any act or take any position that would create a conflict with the client’s interest, and this is precisely what the judge did. Because of the lack of a record, we do not know how severely the client’s interests were compromised, and because of the seriousness of the charges and the position of the judge, I do not believe we should attempt to pass judgment on the recommendations of the JQC on the basis of the record at hand.
Our adversary system hangs on the slender thread of the integrity of the lawyer. Weaken or damage that thread or the confidence that the people repose in it and the system is destroyed. That very integrity is perhaps the single most important ingredient in the moral fiber of the lawyer. It must never be breached or compromised. The lawyer makes the system work and without him and his functions the system would collapse. Nor can the system survive when its judges fail to embody integrity, impartiality and justice. In this regard, the burden on judges exceeds that on lawyers to avoid even the appearance of impropriety.
If the judge were not a judge and were a practicing lawyer, his breach of the Code of Professional Responsibility would undoubtedly merit a suspension in excess of three months (thus requiring proof of rehabilitation before being readmitted to practice) or perhaps disbarment. Should the punishment be any less now that the lawyer has in the meantime become a circuit judge? I think not.
The JQC has recommended a reprimand and the majority of the Court is approving that punishment. I do not believe that this disposition comports with justice. I am apprehensive that the public’s confidence in the judge will have been seriously undermined, or perhaps destroyed, by his past conduct as a lawyer. What confidence in the impartiality of the judiciary will a defendant in a criminal case have when he appears before the judge knowing that as a lawyer the judge secretly conferred with the prosecutor in a case which was being defended by his firm and counseled the prosecutor on how to obtain a conviction in that very type of case? Will he not, with some reason, feel that the judge’s sympathies are still with the prosecutor? How can the judge, in the eyes of the public or of those who appear before him, possibly eradicate the lingering doubts about the judge’s integrity and impartiality, all stemming from this secret meeting? The charges made against the judge are far too grave for a simple reprimand to suffice, but by the same token I am loathe to vote to remove him from office on the basis of the stipulated facts.
The issue before us is far too serious, and the consequences too far-reaching, to handle on the basis of the facts given to us. I would therefore refuse to accept the recommendations of the JQC and would remand the matter to the JQC to handle by means of formal proceedings.
I therefore dissent.
SHAW, J., concurs.

. Art. V, § 12.